## S96A1214. BURGESON v. THE STATE.
### (475 SE2d 580)

HINES, Justice.

Melissa Leslie Burgeson was found guilty of malice murder, felony murder while in the commission of armed robbery, armed robbery, and theft of a motor vehicle in connection with the fatal stabbing and beating of Keith Patrick Young.[1] Burgeson challenges the indictment, discovery, the evidence, the lack of a jury poll, and the State's opening statement and closing argument. We affirm.

The State's evidence established that the day before the killing,

---

[1] The crimes occurred on October 8, 1992. Burgeson and Timothy Don Carr were indicted for malice murder, felony murder while in the commission of armed robbery, armed robbery, and theft of a motor vehicle on November 16, 1992. On December 3, 1992, the State filed a notice of intent to seek the death penalty and notice of aggravating circumstances. Burgeson was tried before a jury in the Superior Court of Monroe County on January 24, 1994, through February 4, 1994, and was found guilty of all charges. The jury returned a sentence of life imprisonment for the malice murder. The court sentenced Burgeson to a consecutive 20 years of incarceration for the motor vehicle theft. The felony murder and armed robbery stood vacated by operation of law, OCGA § 16-1-7. A motion for new trial was filed on March 1, 1994, amended on October 20, 1994, and denied on March 4, 1996. The notice of appeal was filed on March 12, 1996, and the appeal was docketed in this Court on April 18, 1996. The case was submitted for decision without oral argument on June 10, 1996.

Burgeson, her boyfriend Timothy Carr, 17-year-old Young, and others were at a residence, smoking marijuana, drinking alcohol, and ingesting boiled hallucinogenic mushrooms. Burgeson learned that Young had cashed his paycheck. During the evening, Burgeson and Carr discussed robbing and killing Young and taking his car. At some point, Burgeson obtained the keys to the car Young was driving. Young became uncomfortable and attempted to reclaim his keys but was unsuccessful. He telephoned a cousin asking for a ride home but could not get assistance. Burgeson unplugged the telephone following the call. Burgeson and Carr decided that the group would ride out to the country in Young's car. Burgeson drove and Carr sat in the back seat. Carr showed the woman sitting next to him a large knife and whispered to her that he was going to kill Young. Burgeson drove to a deserted area and stopped the car, presumably to let Young get more drugs from the trunk. As Young bent over the trunk, Burgeson mouthed to Carr "[d]o it now." Carr slashed Young's throat but Burgeson told Carr "[t]hat ain't good enough." Carr again slit Young's throat and began stabbing him. Carr retrieved a baseball bat and struck Young several times in the head. Burgeson took Young's money and Young was dragged to the side of the road.

Burgeson, Carr and one of the others fled to Tennessee in Young's car after they became aware that Young's body had been found. A lookout was issued for the vehicle and Tennessee police spotted it. After police attempted to stop the vehicle, a high-speed chase ensued and Carr crashed the car into a utility pole. Carr and Burgeson attempted to flee on foot but were apprehended and taken to a hospital. The blood-caked knife used in the stabbing was found in Burgeson's purse inside the car.

After receiving medical treatment, Burgeson and Carr were placed in the back of a patrol car where the police had activated a hidden tape recording device. The recording of the conversation between Burgeson and Carr was introduced at trial. In it, Carr admitted stabbing and beating Young, and he and Burgeson discussed that they should have disposed of the knife as they had the baseball bat, and the possibility of telling the police the fabrication that the killing was the result of defending Burgeson from the victim's attempted rape.

1. The contention that the trial court erred in not granting Burgeson's motion for new trial because the indictment did not adequately set out the charges against her is without merit. Burgeson fails to demonstrate how the indictment is deficient. In fact, examination of the document reveals that it charges the offenses in the language of the Code and is clearly and easily understood. OCGA § 17-7-54; *Stewart v. State*, 246 Ga. 70, 72 (2) (268 SE2d 906) (1980).

2. It was not error for the trial court to deny Burgeson's motion

for new trial based upon the State's alleged failure to disclose exculpatory material in violation of *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

Burgeson asserts three violations: (1) an August 6, 1993, exchange between Carr and the district attorney which was disclosed to Burgeson ten days before the start of trial; (2) statements by Carr in a conversation with the district attorney during Burgeson's trial on February 1, 1994, of which there was no written record; and (3) statements made by another of the defendants, a juvenile, A. D., to the district attorney concerning a conversation A. D. had with Carr about robbing the victim.

In order to demonstrate a *Brady* violation a defendant must show that the State possessed evidence favorable to the defendant; the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different. *Zant v. Moon,* 264 Ga. 93, 100 (3) (440 SE2d 657) (1994).

The State did not run afoul of *Brady* in regard to the August 6, 1993, statements because there is no violation when the information sought becomes available to the accused at trial. *Stephens v. State,* 264 Ga. 761, 762 (3) (450 SE2d 192) (1994). Burgeson has not shown that earlier disclosure would have benefited her and that any delay deprived her of a fair trial. *Dennard v. State,* 263 Ga. 453, 454 (4) (435 SE2d 26) (1993). Burgeson likewise fails to demonstrate a *Brady* violation with regard to the mid-trial conversation between Carr and the district attorney. The uncontradicted evidence is that Carr's portion of the unrecorded exchange was no different than his August 6, 1993, statements. As to statements by A. D. regarding a conversation with Carr, the district attorney informed the court that there was nothing said which was exculpatory to Burgeson. Even accepting Burgeson's premise that the mere fact that Carr and A. D. discussed robbing the victim was evidence that Burgeson did not herself participate in the robbing or the killing, the pre-trial lack of disclosure does not provide recourse under *Brady.* The information was revealed on direct examination of A. D., and Burgeson had the opportunity to cross-examine A. D. and assert her position to the jury. See *Marshall v. State,* 266 Ga. 304, 307 (9) (466 SE2d 567) (1996). Here again, Burgeson has failed to show any positive effect from earlier disclosure or that the lack of it resulted in her harm. *Dennard,* supra at 454 (4).

3. Burgeson contends that the trial court erred in refusing to suppress evidence, including the bloody knife and the taped conversation with Carr, because the evidence was illegally obtained. The

contention fails.

(a) She maintains that she was unlawfully seized and that her arrest was illegal because it was without probable cause. First, while probable cause is necessary for an arrest, it is not for an investigative stop. An officer may make a brief investigative stop of a vehicle if it is justified by "specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." *State v. Canidate*, 220 Ga. App. 276, 277 (469 SE2d 710) (1996), citing *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968). Here, the authorities were able to positively identify the body of the victim, get a description of the victim's car including the license plate, learn that the victim was last seen with Burgeson and three others, and that certain of the individuals were hiding out in Tennessee. Based upon this information a nationwide lookout was issued for the victim's car, and three of the individuals last seen with the victim including Burgeson. The Tennessee police stopped the car after observing that it along with the three individuals inside matched the descriptions given in the lookout. Clearly, this provided the basis for reasonable and articulable suspicion justifying the stop. *McGhee v. State*, 253 Ga. 278, 279 (1) (319 SE2d 836) (1984).

But then the police had more, they had probable cause, which can rest upon the collective knowledge of the police when there is some degree of communication between them, instead of the knowledge of the arresting officer alone. *Goodman v. State*, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985). Burgeson and her cohorts fled the police after the attempted stop. Flight can be a significant factor in determining probable cause. See *Howie v. State*, 218 Ga. App. 45, 46 (1) (459 SE2d 179) (1995); *Manley v. State*, 217 Ga. App. 556 (1) (458 SE2d 179) (1995). This coupled with the other knowledge that Burgeson was one of the last people seen with the victim, that she had left the state after the murder occurred, and that she was in the victim's car amounted to circumstances sufficient to warrant a prudent person in believing that Burgeson had committed or was committing an offense. *Callaway v. State*, 257 Ga. 12, 13 (2) (354 SE2d 118) (1987).

(b) She maintains that the warrantless searches of the victim's vehicle were in violation of the Federal Constitution because they flowed from her arrest which was illegal as without probable cause and because there was no exigency which would have obviated the need for a warrant. However, Burgeson cannot assert a violation of her Fourth Amendment rights in regard to the search of the car because she had no proprietary interest in it or legitimate expectation of privacy regarding the vehicle or its contents. *United States v. Salvucci*, 448 U. S. 83 (100 SC 2547, 65 LE2d 619) (1980); *Rakas v. Illinois*, 439 U. S. 128 (99 SC 421, 58 LE2d 387) (1978). On the contrary, as one knowingly using a stolen vehicle on a public roadway,

Burgeson probably was in constant expectation of intrusion by the authorities. *Brisbane v. State*, 233 Ga. 339, 344 (211 SE2d 294) (1974). Moreover, it is clear that following the attempted police stop, Burgeson abandoned, for Fourth Amendment purposes, the stolen vehicle and her personal belongings inside. See *Bloodworth v. State*, 233 Ga. 589, 590 (2) (212 SE2d 774) (1975); *Young v. State*, 190 Ga. App. 775, 776 (380 SE2d 309) (1989).

(c) Burgeson claims that the court should have suppressed her recorded statements because they were obtained in violation of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) in that at the time of her arrest she asserted her rights to remain silent and to have counsel. The claim is unavailing. The statements were not the result of an in-custody interrogation, which is necessary to invoke *Miranda*. *Thomas v. State*, 243 Ga. 217, 218 (1) (253 SE2d 190) (1979).

(d) Burgeson contends that the conversation with Carr should have been suppressed because the tape recording was in violation of Title III of the Omnibus Crime Control and Safe Streets Act, 18 USC § 2510 et seq., which governs wire interception and interception of oral communications, and the state statutes regulating eavesdropping, surveillance, or the interception of communication which invades the privacy of another, OCGA §§ 16-11-62 through 16-11-67. The argument to suppress on these grounds fails.

The federal statutes, by definition, apply to only those oral communications "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 USCA § 2510 (2). The United States Court of Appeals for the Eleventh Circuit has determined that the statutory test, as well as the constitutional test under the Fourth Amendment, is the existence of a reasonable or justifiable expectation of privacy, and that a person seated in a police car does not have a reasonable expectation of privacy either under Title III of the Act or the Fourth Amendment. *United States v. McKinnon*, 985 F2d 525, 527 (11th Cir. 1993).

The focus of our state statutes is to protect persons from invasions of their privacy. See *Ransom v. Ransom*, 253 Ga. 656 (324 SE2d 437) (1985). There is an express exception for recording the activities of another incarcerated in a jail, correctional institution or other facility in which a person who is charged or has been convicted is being held. OCGA § 16-11-62 (2).[2] For the purpose of a privacy analy-

---

[2] OCGA § 16-11-62 (2) provides it is unlawful for:
[a]ny person, through the use of any instrument or apparatus, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view; provided, however, that it

sis, a police car is much like a jail cell, that is, no reasonable expectation of privacy exists. See *United States v. McKinnon*, supra.

In *McKinnon* the Eleventh Circuit applied a two-part test: (1) did the person's conduct exhibit a subjective expectation of privacy; and (2) is the person's subjective expectation of privacy one that society is willing to recognize as reasonable. Id. at 527 [3]. See also *Smith v. Maryland*, 442 U. S. 735, 740 (99 SC 2577, 61 LE2d 220) (1979) and *Katz v. United States*, 389 U. S. 347, 361 (88 SC 507, 19 LE2d 576) (1967). Here, there is no evidence that the police did anything to foster a belief that post-arrest conversation in the back seat of the patrol car would be private in any regard. Even accepting that the mere fact of the inculpatory exchange with Carr exhibited Burgeson's subjective expectation of privacy, the expectation was not reasonable. The interception of Burgeson's conversation with Carr in the back seat of the patrol car does not offend our state wiretapping statutes.

4. It was not error for the trial court to refuse to grant the motion for new trial on the ground that the district attorney made improper remarks in his opening statement.[3] Burgeson has failed to demonstrate any harm. What is more, even though Burgeson took issue with other comments by the district attorney in opening, there was no objection to the remarks now challenged. Therefore, the issue is waived on appeal. *Smith v. State*, 221 Ga. App. 428 (3) (472 SE2d 4) (1996).

5. Burgeson challenges the admission into evidence at trial of the conversation with Carr as violative of OCGA § 24-3-52.[4] The challenge fails. In this case the co-conspirator took the stand and was subject to cross-examination by Burgeson's attorney. *Knight v. State*, 266 Ga. 47, 49 (4) (c) (464 SE2d 201) (1995); *Pippin v. State*, 205 Ga. 316, 325 (12) (53 SE2d 482) (1949). Moreover, the criminal enterprise had not ended. The statements were made when Burgeson and Carr were actively attempting concealment. See OCGA § 24-3-5.

6. The contention that the tape recordings and transcripts of the conversation with Carr were inadmissible because the State failed to establish a chain of custody fails. Audiotapes are distinct recognizable physical objects that can be identified upon observation. *Gadson*

---

shall not be unlawful to use any camera, photographic equipment, videotape equipment, or other devices to observe, photograph, or record the activities of persons incarcerated in any jail, correctional institution, or any other facility in which persons who are charged with or who have been convicted of the commission of a crime are incarcerated, provided that such equipment shall not be used while the prisoner is discussing his case with his attorney.

[3] At issue are statements about the disposition of charges against two juveniles involved in the crimes, A. D. and M. S., who were appearing as witnesses for the State.

[4] OCGA § 24-3-52 provides: "The confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself."

*v. State,* 263 Ga. 626, 627 (2) (437 SE2d 313) (1993); *Crosby v. State,* 259 Ga. 822, 824 (3) (b) (389 SE2d 207) (1990).

7. Burgeson's contention that testimony as the result of certain questions by the prosecutor impermissibly placed her character in issue in violation of OCGA § 24-9-20 is unavailing. She failed to raise character as a basis of objection and therefore is precluded from review of any such challenge on appeal. *Hartman v. State,* 266 Ga. 613, 614 (2) (469 SE2d 163) (1996); *Earnest v. State,* 262 Ga. 494, 495 (1) (422 SE2d 188) (1992).

8. It was not error for the trial court to fail to grant a new trial on the ground that the district attorney improperly introduced new evidence in his closing argument. The district attorney did not introduce new evidence. Witnesses testified about the nature of the crimes, including statements made by the other defendants, and the nature of the victim's wounds. An inference could be made as to how the victim died, and the law permits prosecutors considerable latitude in making closing argument. *Crowe v. State,* 265 Ga. 582, 592 (18) (c) (458 SE2d 799) (1995). Moreover, the objection now made was not raised at trial, and even if the prosecutor's argument had been improper, which we do not find, there is no reasonable probability that it changed the result at trial. Id. at 592 (18) (a) & (b).

9. The challenge for failing to poll the jury fails. The proper time to request a poll of the jury is when the jury has rendered its verdict, that is, right after the jury has returned a verdict of guilty or right after a jury has rendered the sentence to be imposed. *Plummer v. State,* 229 Ga. 749, 751 (194 SE2d 419) (1972). Burgeson's only request to poll the jury was made at the close of evidence, when the court was going over the Unified Appeal Outline. Moreover, defense counsel failed to lodge any objection to the lack of a poll. *Clifford v. State,* 266 Ga. 620, 623 (5) (469 SE2d 155) (1996).

10. The contentions that the felony murder and malice murder convictions were contrary to and against the weight of the evidence fail. This Court reviews the sufficiency of the evidence and not its weight. *Smith v. State,* 265 Ga. 495, 496 (5) (458 SE2d 347) (1995). The evidence was sufficient for a rational trier of fact to find Burgeson guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 1996.

*Ham, Jenkins, Wilson & Wangerin, Phillip B. Ham, Thomas H. Wilson,* for appellant.

*Tommy K. Floyd, District Attorney, Marie R. Banks, Assistant District Attorney, Michael J. Bowers, Attorney General, Wesley S.*

*Horney, Assistant Attorney General,* for appellee.