## S05A1402. WALDRIP v. HEAD.
### (620 SE2d 829)

BENHAM, Justice.

Tommy Lee Waldrip was convicted in 1994 of murdering Keith Lloyd Evans and related crimes. Waldrip was sentenced to death for the murder, and this Court unanimously affirmed. *Waldrip v. State*, 267 Ga. 739 (482 SE2d 299) (1997). Waldrip filed a petition for writ of habeas corpus on March 17, 1998; an evidentiary hearing was held on April 29, 2002; and his petition was denied in an order filed on June 10, 2004. This Court granted Waldrip's application for certificate of probable cause to appeal on May 9, 2005, and directed the parties to address whether the habeas court erred in denying Waldrip's evidence suppression claims and in denying Waldrip's claim regarding the State's use, during his competency trial, of his silence and request for counsel. For the reasons set forth below, we find no reversible error and therefore affirm.

## I. Factual Background

The evidence at Tommy Lee Waldrip's trial showed that his son, John Mark Waldrip, had been convicted of armed robbery, had successfully moved for a new trial, and was awaiting retrial. Keith Evans was to be a witness in the armed robbery retrial. Late on the night of April 13, 1991, Tommy Lee Waldrip, John Mark Waldrip, and Tommy Lee Waldrip's brother-in-law, Howard Livingston, drove to a secluded highway where they stopped Keith Evans as he was driving home from work. Keith Evans was shot twice with a shotgun as he sat in his truck, was driven in his truck to another location, was beaten to death, and was buried in a shallow grave at a third location.

## II. Allegedly Suppressed Evidence

Waldrip claims that the State suppressed a number of items of allegedly exculpatory evidence in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). To prevail on an evidence suppression claim, one must show

the State possessed evidence favorable to the defendant; the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.

*Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996). Below, we discuss each item of allegedly suppressed evidence, and we then analyze any collective prejudice suffered by Waldrip and the impact of procedural default on Waldrip's overall evidence suppression claim.

A. *"Summary Report"*

Waldrip had numerous contacts with law enforcement officers before and after his arrest. During his habeas proceedings, Waldrip obtained a "Summary Report," a 22-page document apparently summarizing various aspects of the murder investigation. At the conclusion of a section describing Waldrip's arrest, the report states as follows: "Tommy was initially interviewed by Sheriff Chester, [sic]. However, he asked for an attorney and the interview was terminated." Waldrip argues this statement in the "Summary Report" adequately proves he requested counsel after his arrest. He then argues his uncounseled, highly-inculpatory statements to Georgia Bureau of Investigation Agent Tim Attaway the day after his arrest are inadmissible because they were made as a result of Agent Attaway's initiating contact with him in violation of *Edwards v. Arizona*, 451 U. S 477 (101 SC 1880, 68 LE2d 378) (1981).

In its analysis, the habeas court stated that the "Summary Report" "was not *Brady* material but, instead, constituted the work product of the State and, as such, was not discoverable by the defense." In support of its ruling, the habeas court cited *Foster v. State*, 258 Ga. 736 (4) (374 SE2d 188) (1988), which concerned a motion by the defense for an in camera review of the prosecution's jury selection notes. However, the habeas court's reliance on *Foster* to answer Waldrip's *Brady* claim was misplaced, as this Court explicitly noted in *Foster* that that case did not involve the constitutional right to exculpatory information under *Brady*. Certainly, much of a prosecutor's work product will not fit the definition of exculpatory evidence subject to disclosure under *Brady*, but were the work product doctrine and the constitutional right to exculpatory evidence to be in conflict, the former obviously would have to yield to the latter.

The habeas court continued its analysis as follows: "Additionally, the summary report is not *Brady* material in that Petitioner, himself, was aware that he had told law enforcement that he wanted to speak to an attorney." That reasoning is partially valid in that it highlights the requirement that "the defendant did not possess the evidence nor could he [have] obtain[ed] it himself with any reasonable diligence." *Burgeson*, supra, 267 Ga. at 104. It is also superficially consistent with our decisions holding that exculpatory portions of a defendant's pretrial statements to law enforcement generally are not *Brady* material because the information contained therein is known to the defendant. See, e.g., *Lobdell v. State*, 256 Ga. 769 (5) (353 SE2d 799) (1987). However, the habeas court's analysis fails to address the

possibility that the "Summary Report" could have been used at trial as admissible evidence of the Sheriff's *own* knowledge of Waldrip's alleged request for counsel. It is one thing to say the State has no constitutional duty to remind a defendant of his or her own pretrial allegations of fact contained in his or her own statement to law enforcement officers, but it would be another case altogether if the State failed to disclose evidence confirming the defendant's allegations.

Having noted the deficiencies in the habeas court's reasoning, we still must examine whether Waldrip, based on the showing he made in the habeas court, has demonstrated that the "Summary Report" is admissible evidence capable of supporting any of his claims. The statement at issue in the "Summary Report" is the written hearsay statement of its author. Although one prosecutor, Lee Darragh, testified in a deposition that "it appear[ed]" that the "Summary Report" was prepared by another prosecutor, Raymond George, and although the "Summary Report" itself bears Raymond George's name, there is nothing in the record to indicate that Waldrip ever even attempted to call Raymond George as a witness. Furthermore, Waldrip did not even question Lee Darragh specifically about the portion of the "Summary Report" at issue here. Given Waldrip's failure to show the relevant statement in the "Summary Report" to be anything other than hearsay and quite possibly double hearsay, his failure to attempt any showing of why the general exclusion of hearsay should not apply in this case, and his failure to show any specific lawful use of the statement, the statement in the "Summary Report" must be regarded as completely inadmissible and without probative value. See *Bridges v. State*, 279 Ga. 351, 354-355, n. 12 (613 SE2d 621) (2005); *Roebuck v. State*, 277 Ga. 200, 204 (1) (586 SE2d 651) (2003) (noting "Georgia's long-standing rule that inadmissible hearsay lacks probative value even though the opposing party does not object to its introduction"). One may speculate as to the possible source or correctness of the statement in the "Summary Report" regarding a request for counsel,[1] but the restrictions on hearsay evidence exist for the very purpose of forbidding such baseless speculation conducted without the truth-seeking benefits of proper evidentiary procedure.

In light of the complete absence of admissible evidence showing any prejudice to Waldrip's defense at trial, this individual claim does nothing to contribute to a showing of overall prejudice arising from

---

[1] Our review of the record indicates, for example, that Waldrip made a request for counsel *prior* to his arrest, which, if one were to speculate, conceivably could have been the source of the statement in the "Summary Report."

suppressed evidence. Similarly, Waldrip's related claim alleging the prosecution's failure to correct false testimony and Waldrip's attempt to overcome the procedural bar to that claim must fail because he has not produced any admissible evidence to show that the testimony at trial was, in fact, false. See *Byrd v. Owen*, 272 Ga. 807, 809-812 (536 SE2d 736) (2000) (discussing claim of uncorrected false testimony under federal constitutional standards).

*B. Mental Health Evidence*

Waldrip contends that the State suppressed the following five items of evidence that would have been helpful to him in his competency trial and in his criminal trial: a scoring sheet from a psychological test; notes from an expert's mental status examination; notes from an outpatient interview; information about a statement made by one of Waldrip's jail mates; and a parole report stating Waldrip was "unstable at times." As the discussion below indicates, we conclude that Waldrip's claims regarding these items do not show significant prejudice in support of his overall evidence suppression claim or his attempt to overcome the procedural default of that claim.

First, Waldrip argues that the State suppressed the scoring sheet from a Minnesota Multiphasic Personality Inventory-2 test. The Warden argues that Waldrip cannot show cause to overcome the procedural default to this claim, that the material in question is not *Brady* material because Waldrip had equal access to it, and that no *Brady* violation can be shown because Waldrip's trial counsel actually obtained the material in question during Waldrip's competency trial. Pretermitting these more complex objections to Waldrip's claim, we examine the scoring sheet in the context of Waldrip's competency and criminal trials and in light of the evidence in Waldrip's habeas proceedings and find no significant prejudice. Dr. Robert Storms, one of the two experts involved in the MMPI-2 testing, provided an affidavit describing the scoring error and stating that the corrected score was only "slightly elevated above the normal range." Dr. Storms stated in the affidavit that additional testing would have been suggested by the corrected score, but Waldrip has not even attempted to show what such additional testing would have shown. Furthermore, we note that reference was made in Waldrip's competency and criminal trials to other clinical testing showing results similar to the corrected MMPI-2 test in question. On balance, we find that the corrected scores on the MMPI-2 test would not have had a significant effect on Waldrip's trial proceedings.

Second, Waldrip claims that the State suppressed notes made by Dr. Jerold Lower on a form entitled, "MENTAL STATUS EXAMINATION." We find that the "AGNOSTIC IMPRESSION" reflected on this form of a delusional disorder and a personality disorder are quite consistent with Dr. Lower's official report, which was provided to trial

counsel, and with Dr. Lower's testimony in Waldrip's competency trial. Thus, again pretermitting the Warden's arguments regarding an alleged lack of cause to overcome the procedural default to this claim, we conclude that Waldrip sustained no actual harm by not having these notes.

Third, Waldrip claims that the State suppressed handwritten notations by Dr. Storms on a form entitled, "OUTPATIENT EVALUATION STRUCTURED INTERVIEW." Waldrip argues that Dr. Storms's notes indicate "some" past outpatient mental health treatment and, thus, contradict Dr. Storms's testimony in the trial court. Our examination of the interview form, however, confirms the Warden's assertion that the reference to "some" treatment was related to Waldrip's treatment in jail, treatment counsel were well aware of from Dr. Storms's and Dr. Lower's formal reports. Pretermitting the Warden's arguments regarding the alleged lack of cause to overcome the procedural default and other alleged defects to Waldrip's claim, we conclude that the claim fails to show that Waldrip suffered any actual harm.

Fourth, Waldrip claims that a report from the Dawson County jail was suppressed by the State. Our review of the record confirms the habeas court's finding of fact that counsel were aware of the inmate described in the report and of the inmate's knowledge of Waldrip's alleged belief that he was being monitored by jail officials. Accordingly, we find that Waldrip was not prejudiced by not having the report at issue.

Fifth and finally, Waldrip claims that the State suppressed a portion of his parole file that indicated he "was unstable at times." Pretermitting the State's argument that counsel likely obtained this document before trial, we find, in light of the other evidence available to counsel and the evidence actually presented, that this brief comment in Waldrip's parole file would not have had a significant impact on Waldrip's trial proceedings.

*C. Polygraph of Paul Waldrip*

Waldrip claims that the State suppressed the results of a polygraph examination of his son, Paul Waldrip. This claim was raised on direct appeal, and this Court held that Waldrip had not shown prejudice, because the polygraph results would not have been admissible at trial. *Waldrip*, supra, 267 Ga. at 750. This Court then continued its analysis and found that, even assuming arguendo that the polygraph results would have been admissible, Waldrip still could not show sufficient prejudice to sustain his evidence suppression claim. Id. Waldrip argues now, however, that res judicata should not apply to this claim, because the law has changed since the claim was raised on direct appeal. See *Bruce v. State*, 274 Ga. 432 (2) (553 SE2d 808) (2001) (noting that the creation of new law can overcome res

judicata). But see also *Head v. Hill*, 277 Ga. 255 (II) (A) (1) (587 SE2d 613) (2003) (discussing the rules governing the retroactive application of new law). Waldrip also argues that his appellate counsel rendered ineffective assistance in how they argued the issue of Paul Waldrip's polygraph.

The new law that Waldrip argues is now controlling and that he alleges his appellate counsel should have argued on direct appeal was announced by this Court in *Height v. State*, 278 Ga. 592 (1) (604 SE2d 796) (2004) (overruling *Baxter v. Kemp*, 260 Ga. 184 (8) (391 SE2d 754) (1990)), where we held that polygraph results may be admissible by the defense in the sentencing phase of a death penalty case, even absent a stipulation by the State, if a sufficient showing of the polygraph's reliability is made. However, even assuming arguendo that this new law could have retroactive effect in this habeas proceeding (see *Hill*, supra, 277 Ga. at 257), we find Waldrip has failed even to attempt the showing of reliability necessary to conclude that the polygraph results would be admissible under *Height*. Accordingly, Waldrip has failed to show any prejudice in support of his overall evidence suppression claim or in support of his attempt to overcome the procedural default of that claim. This failure to show prejudice is also fatal to his ineffective assistance of appellate counsel claim. *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985) (addressing the prejudice required in an ineffective assistance claim).

*D. Letter from District Attorney*

Waldrip argues the State suppressed a letter from the District Attorney and an Assistant District Attorney addressed to the Superior Courts Sentence Review Panel that outlined John Mark Waldrip's criminal history, including his involvement in various crimes with Robert Garner, and urged the panel to refuse to reduce John Mark Waldrip's dual life sentences for two armed robberies that occurred fifteen months before the murder of Keith Evans, the victim in the instant case. This letter is the written hearsay statement of its author, and Waldrip has failed to show how it could have been used at trial as admissible evidence or what specific admissible evidence it would have led to. See *Bridges*, supra, 279 Ga. at 354-355, n. 12; *Roebuck*, supra, 277 Ga. at 204 (noting "Georgia's long-standing rule that inadmissible hearsay lacks probative value even though the opposing party does not object to its introduction"). We also find no merit to Waldrip's contentions that his trial counsel's cross-examination of Robert Garner would have been meaningfully improved if counsel had been aware of the letter.

*E. Alleged Misconduct by Law Enforcement Officers*

Waldrip argues that the State suppressed information about an investigator who, in a completely unrelated case, acted improperly in order to allow a GBI agent's sister to avoid a conviction for DUI. The

habeas court properly relied on this Court's decision in *Pruitt v. State*, 270 Ga. 745 (21) (514 SE2d 639) (1999), which involved this same incident of misconduct, to hold that evidence of this unrelated misconduct could not have been used as evidence, including impeachment evidence, at Waldrip's trial. Accordingly, Waldrip has shown no prejudice in support of his overall evidence suppression claim or in support of his attempt to overcome the procedural default to that claim.

*F. Letter from John Mark Waldrip*

Waldrip claims the State suppressed a letter written by his son, John Mark Waldrip, which is addressed to Waldrip and his wife, outlines John Mark Waldrip's plans for his own defense, and concludes with the entreaty, "please make sure they don't charge me with any of this special murder." In light of the evidence actually presented at Waldrip's trial, we do not find any significant prejudice stemming from Waldrip's not having this letter at trial.

*G. Prosecutor's "To Do" List*

Waldrip claims that the State suppressed a list of items apparently outlining tasks to be performed in his murder case. In particular, Waldrip complains that the State did not disclose the final item, which reads, "Probation warrant for Tommy Lee Waldrip." Pretermitting whether, in light of the discussion above concerning the "Summary Report" and the work product doctrine, the habeas court erred by summarily finding this evidence to be shielded from any constitutional duty to disclose, we find no prejudice arising out of Waldrip's not having the list at trial, as he has shown no legal reason to conclude that his arrest for violation of his probation was unlawful.

*H. Analysis of Overall Evidence Suppression Claim*

Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the "cause and prejudice" test. See *Turpin v. Mobley*, 269 Ga. 635 (2) (502 SE2d 458) (1998); *Black v. Hardin*, 255 Ga. 239 (4) (336 SE2d 754) (1985); OCGA § 9-14-48 (d). The prejudice sufficient to satisfy the cause and prejudice test is a prejudice of constitutional dimensions. *Mobley*, supra, 269 Ga. at 637. Waldrip's underlying *Brady* claim is such a constitutional claim. Thus, Waldrip's underlying *Brady* claim and the analysis of the prejudice necessary to satisfy the cause and prejudice test are co-extensive. In light of the discussion above regarding the individual items of allegedly suppressed evidence in this case and upon our review of the trial record, we conclude Waldrip has failed to show that the collective effect of any evidence actually suppressed or assumed for purposes of argument to have been suppressed in reasonable probability led to a different outcome in his trial proceedings. See *Kyles v. Whitley*, 514 U. S. 419, 436 (III) (115 SC 1555, 131 LE2d 490) (1995) (noting that any

suppressed evidence must be considered "collectively, not item by item"). Thus, we conclude both that Waldrip's underlying evidence suppression claim lacks merit and that he has failed to overcome the bar to that claim arising out of procedural default.

### III. Comments Regarding Silence and Request for Counsel

During Waldrip's competency trial, the District Attorney questioned expert witnesses, who had examined Waldrip after administering *Miranda* warnings, and Waldrip himself regarding Waldrip's unwillingness in his mental health examinations to discuss the facts of his crimes and regarding his request to consult with his attorney prior to one of those examinations. Waldrip argues that the District Attorney acted improperly and that his trial counsel rendered ineffective assistance by failing to object.

In its order, the habeas court first addressed the underlying claim regarding the prosecutor's comments at the competency trial and found the claim to be barred as res judicata. The underlying claim is not res judicata, however, because, although this Court discussed the claim on direct appeal, it concluded that the issue had been procedurally defaulted by trial counsel's failure to object, not that the underlying claim was without merit. *Waldrip*, supra, 267 Ga. at 743. Furthermore, although this Court on direct appeal found the underlying claim to have been procedurally defaulted, that defaulted claim should be considered in this habeas case if cause and prejudice can be shown, and such cause, if any, could consist of trial counsel's ineffective assistance. See *Turpin v. Todd*, 268 Ga. 820, 826 (493 SE2d 900) (1997) (holding that ineffective assistance of counsel can satisfy the "cause" portion of the cause and prejudice). Such an ineffective assistance claim, which includes a showing both of counsel's deficient performance and of prejudice of constitutional proportions, could warrant relief on its own. See *Smith*, supra, 253 Ga. at 783-784. Thus, Waldrip's claim, in all of its various forms, depends on whether he can show that his trial counsel performed deficiently and that their deficient performance, if any, in reasonable probability changed the outcome of his trial proceedings. Id.

For purposes of our analysis here, we assume arguendo that, contrary to the habeas court's conclusion, an objection to the State's arguments and questions would have been meritorious. See *Black v. State*, 261 Ga. 791 (1) (410 SE2d 740) (1991) (discussing use by the prosecution "at the competency trial and at the trial in the case-in-chief" of a defendant's silence and consultation with counsel). Nevertheless, we find that if trial counsel had made such an assumedly meritorious objection, there would have been no reasonable probability of a different outcome in Waldrip's competency trial. The evidence

of Waldrip's competence was overwhelming, and not even his own expert witness was willing to conclude that he was incompetent. Although, if his own arguments in the competency trial are to be believed, Waldrip suffered some degree of mental illness, experienced mild delusions, and at least once resorted to communicating with his counsel in writing because of his delusions of being monitored, the evidence did not plausibly demonstrate that he fell short of the legal standard of competence to stand trial. See *Stripling v. State*, 261 Ga. 1, 2 (3) (401 SE2d 500) (1991) (noting that a defendant is competent to stand trial if he or she is "capable of understanding the nature and object of the proceedings and is capable of assisting his [or her] attorney with his [or her] defense"); OCGA § 17-7-130. Thus we find that, had trial counsel objected and the allegedly improper argument and questioning been excluded, there is no reasonable probability that the jury would have found Waldrip incompetent.

Finally, Waldrip argues that this Court's decision in *Stanford v. Stewart*, 274 Ga. 468 (1) (554 SE2d 480) (2001) requires that we consider not whether a meritorious objection by trial counsel resulting in the exclusion of the complained of argument and questioning would have resulted in a different outcome, but rather whether an objection by trial counsel would have preserved the alleged error by the trial court for appeal. However, Waldrip misreads our decision in *Stanford*. The error we found in *Stanford* was not that the habeas court had inquired into the possible result on retrial if trial counsel had not waived the defendant's right to complain of an error on appeal. Instead, the error we found was that the habeas court had applied the wrong prejudice standard in making that inquiry, namely, that it had required a showing "that a retrial *would not necessarily result* in acquittal" rather than a showing of merely a *reasonable probability* of acquittal. (Emphasis supplied.) Id. at 470. In Waldrip's case, we follow our decision in *Wadley v. State*, 258 Ga. 465 (369 SE2d 734) (1988), where we explicitly held that the likelihood of a different result at trial if error is corrected by proper objection by counsel, rather than the likelihood of reversal on appeal, is the proper inquiry in an ineffective assistance of trial counsel claim. See also *Landers v. State*, 270 Ga. 189 (4) (508 SE2d 637) (1998) (finding no reasonable probability that trial counsel's failure to object to the prosecutor's improper comments on the defendant's silence led to a different result). As we noted above, we believe that there would have been no reasonable probability of a different outcome in Waldrip's competency proceedings if trial counsel had objected and the argument and questioning at issue had been disallowed.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 12, 2005 —
RECONSIDERATION DENIED NOVEMBER 7, 2005.

*Drinker, Biddle & Reath, David J. Kessler, Lawrence J. Fox, Alicia D. Hickok,* for appellant.

*Thurbert E. Baker, Attorney General, Patricia B. Attaway Burton, Assistant Attorney General,* for appellee.