## S04A1625. RAKESTRAU v. THE STATE.
### (608 SE2d 216)

THOMPSON, Justice.

Defendant Gregory Rakestrau was convicted of malice murder in connection with the stabbing of Adrian Jenkins III.[1] On appeal, Rakestrau asserts three enumerations of error: ineffective assistance of trial counsel, violation of *Batson v. Kentucky*, and violation of the rule of sequestration. Finding no error, we affirm.

On December 21, 2002, defendant, his girlfriend, and his nephew went to a dance party at the Radium Springs Country Club in Dougherty County. Total attendance at the party was approximately 150-200 people. The dance area of the club was illuminated only by a strobe light and light from the bar area. During the party, defendant was involved in a physical altercation with the victim, Adrian Jenkins, as a result of Jenkins' alleged touching of defendant's girlfriend in a provocative manner. Defendant and Jenkins engaged in a fistfight that progressed to a "tussle" on the dance floor. Defendant was observed by onlookers making what appeared to be stabbing motions while on top of Jenkins.

The fight was broken up and defendant left the club. A Dougherty County deputy sheriff who was working off-duty as a security guard observed blood on defendant's shirt. Police officers attempting to control the scene overheard onlookers saying that defendant had stabbed Jenkins. Defendant told one of his friends that he had stabbed the victim. Additionally, defendant's nephew told another friend that defendant had stabbed Jenkins during the fight. Jenkins was helped by friends to the parking lot of the club where he

---

[1] The murder occurred in Dougherty County on December 22, 2002. Defendant was indicted on March 26, 2003, and charged with malice murder, felony murder, aggravated assault, possession of a knife during the commission of a crime, and tampering with evidence. The tampering charge was later dismissed and trial commenced on September 8, 2003. The jury returned a verdict of guilty as to all counts except the weapons charge on September 11, 2003. The trial court sentenced defendant to life imprisonment for malice murder, merging the aggravated assault count and vacating the felony murder count. Defendant's timely filed motion for new trial was denied by the trial court on May 5, 2004. Notice of appeal was filed with the trial court on May 12, 2004. The case was docketed in this Court June 2, 2004, and submitted for a decision on the briefs on July 26, 2004.

collapsed. Medical help was summoned and Jenkins was transported to a local hospital. Jenkins suffered nine stab wounds, including one which penetrated his heart, and he was pronounced dead at the hospital.

Following the fight, defendant left the club and was picked up by friends who drove him to a local convenience store to meet his girlfriend. Defendant, his girlfriend, and his nephew returned to the girlfriend's home in Worth County. Early that morning, after being informed of defendant's whereabouts by defendant's father, an investigator went to the girlfriend's home to interview the three individuals. When he arrived at the home, he smelled something burning. The investigator conducted interviews but did not make any arrests at that time. Upon securing a search warrant for the premises and an arrest warrant for defendant, the investigator returned to the home. During execution of the search warrant, the investigator found a bucket in the back yard containing burned blue jeans and charred cloth fragments. Defendant was arrested and provided the investigator with what he said were the clothes he was wearing at the dance party; however, the clothes appeared fresh and clean. The Georgia Bureau of Investigation found blood and Jenkins' DNA on the inside cuff of defendant's leather jacket, as well as on the shirt defendant's girlfriend wore to the dance.

1. The evidence adduced at trial was sufficient to enable any rational trier of fact to find defendant guilty beyond a reasonable doubt as to the crimes for which he was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant asserts that trial counsel were ineffective because they failed to interview and present a witness whom defendant claims could provide exculpatory testimony. In this regard, defendant asserts that Monica Jenkins[2] would state that she saw another individual stab the victim. The burden is on defendant to prove that his trial counsel's performance was ineffective and that he was prejudiced by this ineffectiveness. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Chapman v. State,* 273 Ga. 348 (541 SE2d 634) (2001). Deference is given to the trial court's factual findings as to a claim of ineffective assistance of counsel and will be upheld on appeal unless clearly erroneous; the lower court's legal conclusions, however, are reviewed de novo. *Callendar v. State,* 275 Ga. 115, 116 (561 SE2d 113) (2002).

Monica Jenkins' statement to police, contained in the record and provided to defense counsel in discovery, does not point to another

[2] Monica Jenkins does not appear to be related to the victim.

individual as the assailant. In fact, the statement actually inculpated defendant because it indicated that defendant was the person who attacked the victim.

Moreover, defendant did not present Monica Jenkins at the hearing on his motion for new trial and thus did not carry his burden of proving that his counsel was deficient for not interviewing and producing the witness at his trial. See *Hudson v. State*, 277 Ga. 581, 584-585 (591 SE2d 807) (2004).

Finally, each one of defendant's trial counsel testified at the motion for new trial hearing that their strategy was to reserve opening and closing argument. Preservation of the right to first and last closing argument is a decision involving trial strategy, *Brown v. State*, 268 Ga. 354, 357 (490 SE2d 75) (1997), and, therefore, it cannot be said that the trial court erroneously rejected defendant's ineffective assistance of counsel claim. See *Washington v. State*, 276 Ga. 655, 659 (581 SE2d 518) (2003).

3. Defendant also asserts that the State used peremptory jury strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Specifically, defendant alleges that the State exercised peremptory challenges to strike four African-American females from the jury pool.[3]

The evaluation of a *Batson* challenge involves three steps: (1) the opponent of the peremptory challenge must make a prima facie showing of discrimination; (2) the burden then shifts to the proponent of the strike to offer a race-neutral explanation for the strike; and (3) the trial court then must decide whether the opponent of the strike has proven discriminatory intent. *Thomas v. State*, 274 Ga. 156, 161 (549 SE2d 359) (2001); *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996). The "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Id. (quoting *Purkett v. Elem*, 514 U. S. 765, 768 (115 SC 1769, 131 LE2d 834) (1995)). The trial court's findings as to whether the opponent of the strike has met the burden of persuasion are "entitled to great deference and will be affirmed unless clearly erroneous." *Turner v. State*, 267 Ga. 149, 151 (476 SE2d 252) (1996); *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987).

In this case, defendant and 14 of the State's witnesses are African-American. The jury was struck from a panel of 30, composed of 15 white and 15 African-American individuals. The final jury was evenly divided between African-Americans and whites. The trial

---

[3] Defendant did not challenge the strikes as gender biased.

court correctly concluded that defendant had made a prima facie case of discrimination as all of the jurors struck by the State were African-American.

(a) *Peremptory Strike of Prospective Juror Redding.*

The reason cited by the State for striking Redding was that she was employed by the Department of Family and Children Services and there was information that defendant's mother may have known either Redding or her co-workers. Clearly, this explanation is one based other than on the race of the prospective juror. The State "articulate[d] a neutral explanation related to the particular case to be tried," *Batson*, supra at 98, namely that Redding or her co-workers might be familiar with defendant's mother.

(b) *Peremptory Strike of Prospective Juror Jones.*

The State explained that Jones was struck for her observed camaraderie with a fellow prospective juror who had previously served as a witness in an unrelated murder trial in which both prosecutors had participated. Additionally, the State indicated a concern that Jones would have difficulty understanding the scientific evidence in the case. On their face, these reasons are racially neutral and not "implausible leading to the conclusion that [they were] pretextual." *Thomas*, supra at 161. Further, the explanations were race neutral because the reasons given were not based upon a characteristic or stereotype peculiar to any race. *Turner*, supra at 152.

(c) *Peremptory Strike of Prospective Juror Harris.*

The reason given by the State for striking Harris was that she had been inattentive during voir dire. Inattentiveness during voir dire has been upheld as a valid race-neutral reason for striking potential jurors. See, e.g., *Trigger v. State*, 275 Ga. 512, 514-515 (570 SE2d 323) (2002), overruled on other grounds in *Wilson v. State*, 277 Ga. 195, 199 (586 SE2d 669) (2003); *Roundtree v. State*, 270 Ga. 504, 506-507 (511 SE2d 190) (1999).

(d) *Peremptory Strike of Prospective Juror Thornton.*

The reasons given by the State for the strike of Thornton from the jury pool was that she had a disabled child at home for whom she was the primary caregiver and that she had fallen asleep during voir dire. Although Thornton indicated that she could make arrangements for the care of her child during the trial, the State believed that she might be preoccupied or concerned with the child's welfare and that this might impact her ability to properly weigh the evidence. There is no indication of racial discrimination apparent in this reason. Additionally, this Court has concluded that sleeping during voir dire constitutes a race-neutral explanation supporting a peremptory strike of a prospective juror. See, e.g., *Trigger*, supra; *Foster v. State*, 272 Ga. 69, 71 (525 SE2d 78) (2000).

Because the trial court did not err in concluding that defendant failed to carry his burden of persuasion regarding a racially discriminatory intent in making the jury strikes, we affirm the trial court's ruling on this issue.

4. Defendant's final enumeration was that the State was allowed to present testimony by a witness in violation of the rule of sequestration, OCGA § 24-9-61. Alicia Martin was interning with the Dougherty County District Attorney's office and assisted the State during the prosecution of defendant's case. Martin sat at counsel table during the proceedings. Martin testified during the State's case in chief as to the brand name of a piece of clothing which had been burned behind the home of defendant's girlfriend. Prior to allowing the testimony, the trial court permitted defense counsel to interview Martin. With the jury present, Martin testified that she had been assisting in the investigation of defendant's case and had been present during the entire trial.

The rule of sequestration is meant to ensure that the testimony of a witness who has yet to testify is not influenced by the testimony of another witness; its violation generally does not affect the admissibility of the testimony, but may impact the offending witness' credibility. *Quijano v. State*, 271 Ga. 181, 183 (516 SE2d 81) (1999); *Childress v. State*, 266 Ga. 425, 431 (467 SE2d 865) (1996). The decision of whether to allow a witness to testify in violation of the rule of sequestration is within the discretion of the trial court and will not be disturbed on appeal unless such discretion is abused. *Pearley v. State*, 235 Ga. 276, 277 (219 SE2d 404) (1975); *Kelly v. State*, 118 Ga. 329, 330 (45 SE 413) (1903).

In this case, the testimony was limited to an identification of the brand name of the burned clothing and there was no indication that Martin's testimony was in any way influenced by the testimony of previous witnesses. Defense counsel conducted a cross-examination that tended to cast doubt upon Martin's ability to correctly identify the material and the fact that Martin had been present during previous testimony was known by the jury. The jury was thus able to gauge Martin's credibility and make a determination as to the weight to afford her testimony. Based on the record, there is no indication that the trial court abused its discretion in permitting Martin to testify in violation of the rule of sequestration.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 24, 2005.

*Hugh O. Morris, Jr.*, for appellant.

*Kenneth B. Hodges III, District Attorney, Bradford R. Pierce, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.