## A09A2281. DUFFIE v. THE STATE.
### (688 SE2d 389)

BLACKBURN, Presiding Judge.

Following a jury trial, Quincy Deon Duffie was convicted of a single count of selling cocaine.[1] Duffie now appeals from the trial court's denial of his motion for a new trial, arguing that the evidence was insufficient to sustain his conviction. Duffie further asserts that the trial court erred in admitting certain evidence and in permitting the State to strike the only two potential jurors who were black. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Drammeh v. State*,[2] the evidence shows that on the afternoon of April 12, 2007, the Fitzgerald Police Department conducted an undercover drug investigation using one male confidential informant and one female confidential informant ("CI"). A police detective met with the two CIs, outfitted the female CI's truck with a hidden audio and video recording device, gave the male CI cash, and instructed the CIs to attempt to buy drugs in Fitzgerald. The CIs then drove together in the female's truck to three different locations known for drug sales, and successfully negotiated a drug purchase at each location. One of those locations was the parking lot of a local apartment complex. The CIs testified that when they drove into that parking lot, Duffie and his stepbrother approached the truck. Duffie stuck his head in the passenger-side window and the male CI told him he wanted to buy "a 20." Duffie responded "hold on," and walked with his stepbrother away from the truck and toward the front of the apartment building. The stepbrother then returned to the truck with a small, plastic bag containing what appeared to be a rock of crack cocaine and handed it to the male CI. In exchange, the male CI gave Duffie's stepbrother

---

[1] OCGA § 16-13-30 (b).

[2] *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

$20, and the CIs left the parking lot. The entire transaction was recorded, and a copy of that recording was played for the jury at trial.

The male CI placed the plastic bag containing the cocaine he purchased from Duffie and his stepbrother in the left, front pocket of his shorts. When the CIs met with the police detective later that afternoon, the male CI removed that bag from his shorts pocket, gave it to the detective and told him where they had purchased it. Both CIs and the detective then watched the video recording of the transaction and, from that recording, the detective was able to identify Duffie and his stepbrother. The detective then took the cocaine that the CIs identified as having been sold to them by Duffie, placed it into a plastic evidence bag, and sealed the same. On the bag's label, the detective wrote the date, the location where the cocaine was purchased, and the names of Duffie and his stepbrother. The male CI witnessed the detective do all of these things. This evidence was subsequently forwarded to the State Crime Lab, where chemical testing confirmed that it was cocaine.

During voir dire, Duffie challenged the State's use of two of its peremptory strikes to eliminate the only two black prospective jurors. The trial court denied the challenge, finding that the State had articulated a race-neutral reason for its decision to strike each of those individuals from the jury.

During trial, Duffie objected to the admission into evidence of the cocaine purchased from him, arguing that the State had failed to demonstrate that such cocaine had, in fact, been obtained from him. In support of this argument, Duffie's trial counsel pointed to the CIs' testimony that they had purchased three separate pieces of cocaine on the day in question, from three different locations. The trial court overruled Duffie's objection and admitted the cocaine into evidence.

Following his conviction, Duffie filed a motion for a new trial, which was denied. This appeal followed.

1. Duffie first argues the evidence was insufficient to sustain his conviction, because it merely showed that he was present at the time his stepbrother sold drugs to the CIs. This argument is without merit.

> In determining the sufficiency of the evidence to sustain a criminal conviction, we view the record in the light most favorable to the verdict, and without affording the defendant a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citation and punctuation omitted.) *Culver v. State.*[3]

Here, both of the CIs testified that they negotiated the purchase of cocaine from Duffie specifically, and not from his stepbrother. Additionally, the videotape of the transaction showed that when Duffie and his stepbrother approached the CIs' vehicle, it was Duffie who stuck his head inside and who spoke with the CIs.[4] Finally, Duffie's stepbrother also testified at trial and stated that it was Duffie who negotiated the sale of cocaine to the CIs. The stepbrother further explained that, after he and Duffie walked away from the CIs' truck, Duffie gave him the cocaine to deliver to the CIs. And, the stepbrother gave to Duffie the money the CIs paid to him for the cocaine.

This evidence was sufficient to allow the jury to convict Duffie of selling cocaine. See *Woods v. State*[5] (testimony of undercover officer identifying defendant, who was one of several men involved in the sale, as the man who sold him cocaine sufficient to sustain conviction); *Jackson v. State*[6] (conviction supported by identification of defendant by undercover officer and videotape showing transaction). See also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

2. Nor do we find any merit in Duffie's claim that the State failed to prove the chain of custody of the cocaine he sold to the CIs, and that the trial court therefore erred in admitting the same into evidence.

> When the [S]tate seeks to introduce fungible material into evidence, it must show a chain of custody which is adequate to preserve the identity of the evidence. Hence, the burden is on the prosecution to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. However, the [S]tate need not negate all possibility of tampering, and need only establish reasonable assurance of the identity of the confiscated evidence.

*Dempsey v. State.*[7] "We review the trial court's decision on the adequacy of the chain-of-custody evidence under an abuse-of-

---

[3] *Culver v. State*, 290 Ga. App. 321 (659 SE2d 390) (2008).

[4] Because a copy of the videotape was not included in the record on appeal, our knowledge of the contents of that tape has been gleaned from the trial transcript, including witness statements about what was shown and was heard on the video.

[5] *Woods v. State*, 287 Ga. App. 268, 269 (651 SE2d 188) (2007).

[6] *Jackson v. State*, 223 Ga. App. 207, 208 (3) (477 SE2d 347) (1996).

[7] *Dempsey v. State*, 265 Ga. App. 175, 176 (3) (593 SE2d 362) (2004).

discretion standard." *Maldonado v. State*.[8]

Duffie argues that the State failed to meet its burden below because it failed to show with reasonable certainty that the cocaine which the CI gave and identified to the police detective as coming from Duffie was, in fact, the cocaine purchased from Duffie. As he did at trial, Duffie attempts to support this argument by pointing to the CIs' testimony that they had purchased three separate pieces of cocaine on the day in question, from three different locations. What Duffie fails to acknowledge, however, is that the male CI testified that he kept each of the three pieces of cocaine he purchased that day in three separate locations, until he could give the same to the police. Specifically, the male CI explained that he placed one piece of cocaine in the glove compartment of the truck, one in the right, front pocket of his shorts, and the piece that he bought from Duffie in the left, front pocket of his shorts. The male CI testified that he removed from the left, front pocket of his shorts the cocaine he identified as having been purchased from Duffie,[9] and both he and the detective stated that the cocaine was bagged and labeled at the scene. This evidence showed to a reasonable certainty that the cocaine introduced at trial was the substance that Duffie sold to the CIs.

Moreover, assuming there was any doubt on this issue, that doubt was for the jury to resolve. The record shows that Duffie's claim as to chain of custody was based solely on conjecture that the CI could have become confused about what he did with each of the three pieces of cocaine he purchased that day. Under such circumstances, "[w]hen there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to its weight." (Punctuation omitted.) *Dempsey*, supra, 265 Ga. App. at 177 (3).

3. Duffie further argues that the trial court erred by rejecting his *Batson*[10] challenge to the State's use of peremptory strikes against the only two potential jurors who were black. We disagree.

> The trial court follows a three-step test for evaluating challenges to peremptory strikes on *Batson* grounds: First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Second, the burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. Third, after hearing from the opponent of the strike and considering the

---

[8] *Maldonado v. State*, 268 Ga. App. 691, 692 (1) (603 SE2d 58) (2004).

[9] The police detective confirmed that the cocaine came from the CI's front, shorts pocket, although he could not remember if it was the right or the left.

[10] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

totality of the circumstances, the trial court then decides whether the opponent of the strike carried his burden of proving [that] discriminatory intent in fact motivated the strike.

(Punctuation omitted.) *Allen v. State*.[11]

"In reviewing the trial court's disposition of the motion, we must bear in mind that . . . [t]he trial court's decision rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province." (Punctuation omitted.) *Jackson v. State*.[12] Accordingly, "[t]he trial court's findings as to whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous." (Punctuation omitted.) *Rakestrau v. State*.[13]

Here, "[t]he threshold issue of whether [Duffie] established a prima facie case of discrimination is moot because the [S]tate offered purportedly race-neutral reasons for its strikes and the trial court ruled on the ultimate issue of purposeful discrimination." *Bass v. State*.[14] Thus, we need only determine whether, in light of the State's proffered reasons for striking the jurors in question, the trial court erred in finding that Duffie had failed to show discriminatory intent. Id. See also *Allen*, supra, 299 Ga. App. at 205 (2).

The prosecutor explained that she struck the first of the prospective jurors at issue because she seemed overly friendly toward Duffie but ignored the prosecutor. She struck the second of those jurors because the woman stated that she knew Duffie's grandmother and "was the only person in the panel who knew anybody in [Duffie's] family." The trial court correctly found that each of these reasons was race-neutral.

It is well established that perceived hostility toward the State and, conversely, perceived favoritism toward the defendant, constitute race-neutral reasons for striking a prospective juror. See *Redding v. State*[15] ("perceived hostility" toward the prosecutor was "a fair basis for exercising a peremptory strike"); *Jones v. State*[16] ("[p]erceived inattention, nonresponsiveness, and hostility have been found to be legitimate, racially neutral reasons for striking a prospective juror") (punctuation omitted); *Jackson*, supra, 220 Ga.

---

[11] *Allen v. State*, 299 Ga. App. 201, 205 (2) (683 SE2d 343) (2009).

[12] *Jackson v. State*, 220 Ga. App. 98, 98-99 (469 SE2d 264) (1996).

[13] *Rakestrau v. State*, 278 Ga. 872, 874 (3) (608 SE2d 216) (2005).

[14] *Bass v. State*, 271 Ga. App. 228, 231 (4) (609 SE2d 386) (2005).

[15] *Redding v. State*, 239 Ga. App. 718, 720 (2) (521 SE2d 840) (1999).

[16] *Jones v. State*, 226 Ga. App. 428, 430 (1) (487 SE2d 62) (1997).

App. at 99 (strike justified where juror's answers to questions posed by prosecutor "as well as her body language, led the prosecutor to fear that [the juror] was ambivalent" about the prosecutor's past treatment of her cousin). Similarly, an acquaintance with or knowledge of a party's family also represents a race-neutral reason for exercising a peremptory challenge. See *Rakestrau*, supra, 278 Ga. at 875 (3) (a).

Duffie, however, argues that the trial court should have found that the State was motivated by discriminatory intent despite the race-neutral reasons it offered for its peremptory challenges. Specifically, Duffie claims that discriminatory intent was demonstrated by the fact that the State struck the only two members of the jury pool who were black. This argument fails, however, because "numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent." (Punctuation omitted.) *Jones v. State*.[17] Here, Duffie offered no additional evidence of discriminatory intent, such as showing that the State failed to strike potential white jurors who were similarly situated to the potential black jurors — i.e., who knew either Duffie or his family, who had displayed signs of favoritism toward Duffie, or who had displayed signs of hostility toward the prosecutor. See *Bass*, supra, 271 Ga. App. at 232 (4). Furthermore, we note that the State did not confine its use of peremptory strikes to the two prospective black jurors; the State also used peremptory challenges against seven white jurors on the jury panel. Accordingly, we cannot say that the trial court erred in denying Duffie's *Batson* challenge for his failure to satisfy his burden of proof. Id. at 233 (4). See also *Allen*, supra, 299 Ga. App. at 206-207 (2).

For the reasons set forth above, we affirm the trial court's order denying Duffie's motion for a new trial.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 14, 2009.

*Steven D. Knittle*, for appellant.
*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.

---

[17] *Jones v. State*, 246 Ga. App. 596 (1) (539 SE2d 602) (2000).