**FOURTH DIVISION**
**RICKMAN, C. J,**
**DILLARD, P. J. and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 16, 2021**

# In the Court of Appeals of Georgia

A21A1054. JOHNSON v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Cecil Johnson on one count of rape and one count of aggravated assault with intent to rape. On appeal, Johnson contends the trial court erred in (1) finding that the jury's verdict was not contrary to the principles of justice and equity; (2) allowing a second trial after his first trial was improperly terminated; (3) denying his challenge to one of the State's peremptory strikes of a prospective juror; and (4) denying his claims that trial counsel rendered ineffective assistance. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that early in the afternoon on July 19, 2003, 13-year-old L. C., her younger sister, and her

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

younger cousin walked to a small, local grocery store to run an errand for a neighbor. After leaving the store and starting their walk back home, the three girls were approached by a man, who asked them for directions to Jonesboro Road. The man—who was ultimately identified as Johnson—was wearing an Atlanta Braves shirt and paint-speckled pants and shoes, and L. C.'s younger sister later recounted that he looked like a construction worker. Subsequently, although the girls pointed out the direction to Jonesboro Road for him, Johnson appeared to continue following them for several minutes as they made their way home.

Nevertheless, the girls returned home without incident, and after dropping off the grocery items with their neighbor, L. C. decided to walk alone to a nearby gas station convenience store to buy something with the money her neighbor paid her. But shortly thereafter, she encountered Johnson, who once again asked for directions to Jonesboro Road. This time, L. C. agreed to walk Johnson toward his destination. And a few minutes into their walk, Johnson asked L. C. if she knew where Dobbs Elementary School was located. L. C. responded that she was unsure, but a moment later, they encountered one of L. C.'s friends, who said they were heading in the right direction.

As the two approached the school, they passed by an abandoned laundromat, at which point Johnson grabbed L. C. by the throat and forced her inside the vacant building. Once there, Johnson ordered L. C. to remove her clothes and lie down on a piece of cardboard that he found on the floor. L. C. complied, at which point, Johnson removed a belt he was wearing and forced her to engage in sexual intercourse. When he finished, Johnson tried to force L. C. to smoke crack with him, but she was unable to do so. Johnson then moved L. C. to another piece of cardboard and once again forced her to have sexual intercourse, all the while threatening to hit her with a stick that he found nearby. Following this second assault, Johnson took the money from L. C. that her neighbor paid her and left the abandoned building.

Once she was certain Johnson was gone, L. C. left the vacant laundromat but took a circuitous route back home out of fear that Johnson might still be in the vicinity. In the meantime, back at home, L. C.'s mother had become concerned that her daughter had yet to return from what should have been a short walk. And not long thereafter, L. C. arrived home disheveled and upset, and immediately informed her mother that she had been raped. And because she did not have a phone, L. C.'s mother went to the neighbor's house and called her eldest son, Chris, and the police. Chris arrived at the house within ten minutes, and guessing that L. C.'s assailant

3

could not have gone very far on foot, he asked L. C. to go with him in his car to look for the perpetrator.

After searching the area for approximately twenty minutes, L. C. saw Johnson drinking from a water fountain in a park and exclaimed, "There he goes right there!" Chris parked the car, approached Johnson, and accused him of raping his sister. Johnson tried to flee, but Chris quickly caught him and forced him back to the car. He then called a friend who lived nearby, explained the situation, and asked for his help in driving the car while he detained Johnson in the back seat. Chris's friend agreed, and all four returned to their mother's home. Upon their return, L. C.'s younger sister noted that Johnson was the same man who asked the girls for directions earlier that afternoon. Johnson again tried to flee but he was subdued with a pair of novelty handcuffs and struck by Chris, his friend, and others in what now had become a crowd. At some point during the melee, a neighbor—the same one who sent L. C. on the errand—heard Johnson claim he did not know that L. C. was a minor and just "wanted to smoke with her."

Several minutes later, two Atlanta police officers arrived on the scene, encountering a crowd surrounding Johnson, who was handcuffed and appeared to have been badly beaten. One of the officers placed Johnson under arrest and—while

4

patting him down—found what appeared to be a crack pipe in his pocket. Subsequently, that officer—who coincidentally also worked as a resource officer at L. C.'s school and thus knew her—took L. C. back to the abandoned laundromat so she could meet with a detective and show him where the assault occurred. As a result, investigators collected two pieces of cardboard found on the floor, a beer bottle (based on L. C.'s claim that Johnson consumed a beer in between the assaults), and a belt. L. C. then went to the hospital for an examination and collection of a rape kit. When L. C. first arrived, she was so hysterical that nurses administered a mild sedative before conducting the examination. After doing so, the examination indicated abrasions and redness to L. C.'s vaginal area that were consistent with sexual assault. In addition, the nurses and a physician observed red marks around L. C.'s neck.

Thereafter, the State charged Johnson, via indictment, with rape, kidnapping, aggravated assault with intent to rape, terroristic threats, and contributing to the delinquency of a minor. The case initially was tried from January 31 to February 1, 2005. But after nearly a day and a half of deliberations, the jury could not reach a

unanimous verdict. The trial court issued an *Allen* charge,[2] but when the jury still could not render a verdict, the court thanked them for their service and dismissed them.

The retrial began on June 26, 2005, during which the State presented the aforementioned evidence. Additionally, the State called as a witness Peter Stein, a contractor who employed Johnson on the day L. C. was assaulted. Stein testified that Johnson worked for him in the past, and on July 18, 2005, he hired him to help with the task of pumping water out of an old theater located in a shopping center not far from where the assault occurred. Stein explained that Johnson monitored the pump overnight, moving it around the floor of the theater as needed. At around 9:00 a.m. the next morning, Stein arrived to check on the work's progress, and shortly thereafter, Johnson left to go get something to eat but stated he would return in short order. But when Johnson had not returned after an hour and a half, Stein left the theater to return the pump before incurring additional rental fees.

---

[2] An *Allen* charge is given by the trial court when the jury in a criminal trial indicates that it is deadlocked, encouraging the jurors to reexamine their opinions in continued deliberations and attempt to reach a unanimous verdict. *See Allen v. United States*, 164 U.S. 492 (17 SCt 154, 41 LEd] 528) (1896); *see generally Humphreys v. State*, 287 Ga. 63, 79-82 (9) (694 SE2d 316) (2010) *disapproved on other grounds by Willis v. State*, 304 Ga. 686, 706 (11) (a) n. 3 (820 SE2d 640) (2018); *Wells v. State*, 297 Ga. App. 153, 160-61 (2) (676 SE2d 821) (2009).

The State also called an independent forensic chemist with experience in paint analysis, who testified that the paint found on the clothes Johnson was wearing when he was arrested could have shared a common source with paint found on the belt recovered from the floor of the abandoned laundromat. After the State rested, Johnson testified in his own defense and denied any involvement in the crime or even encountering L. C. He further claimed that, after leaving the theater, he met up with a friend who drove him to a store on Jonesboro Road, where the two bought some beer. According to Johnson, his friend then departed, and he was waiting at a bus stop when L. C.'s brother, Chris, pulled up in a car with L. C., accused him of raping his sister, and threatened him with a gun in order to force him to go to their mother's home.

Following Johnson resting his case and the State calling several rebuttal witnesses, Johnson moved for a directed verdict of acquittal as to the contributing-to-the-delinquency-of-a-minor charge, which the trial court granted. The case was then submitted to the jury, which found Johnson guilty on the charges of rape and aggravated assault with intent to rape, but not guilty on the charges of kidnapping and terroristic threats.

A month after his convictions, Johnson filed a motion for new trial, and he later obtained new counsel. On April 27, 2009, nearly four years after his retrial, he filed an amended motion for new trial, which included, *inter alia*, claims that his trial counsel rendered ineffective assistance. On July 10, 2018, nearly 13 years after his convictions and sentencing, the trial court held a hearing on his motion for new trial, during which his trial counsel testified as to her representation in both the initial trial and the retrial. The hearing concluded with the trial court taking the matter under advisement, and several months later, it issued an order denying Johnson's motion.[3] This appeal follows.

1. Johnson contends that the trial court erred in denying the claim in his motion for new trial that the jury's verdict was contrary to the principles of justice and equity. We disagree.

---

[3] The hearing on Johnson's motion for new trial included a lengthy discussion regarding the reasons for the rather egregious delay between his convictions and the hearing. And in its order denying Johnson's motion, the trial court—which inherited the case from several predecessors but nevertheless acknowledged its own shortcomings in moving the case forward—lamented the fact that it had taken far too long for Johnson's appellate rights to be addressed. We will not belabor the issue further other than to reiterate our Supreme Court's admonition that "these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient." *Owen v. State*, 303 Ga. 254, 259 (4) (811 SE2d 420) (2018).

Although Johnson does not argue that the evidence was insufficient to support his convictions, he did so in his initial motion for new trial and contends, generally, on appeal that the trial court erred in denying his motion for new trial. Given these circumstances, including the length of time Johnson's post-conviction rights have gone unaddressed, we would be remiss in *not* addressing whether the evidence was sufficient in this matter. So, we will do just that.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[4] And, of course, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[5] The jury's verdict will be upheld, then, so "long as there

---

[4] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[5] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[6]

Under former OCGA § 16-6-1 (a) (1), "[a] person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ."[7] And former OCGA § 16-5-21 (a) (1) provided, in pertinent part: "A person commits the offense of aggravated assault when he assaults . . . [w]ith intent to murder, to rape, or to rob[.]"[8]

Here, the State presented evidence that L. C. encountered Johnson twice during the same day for significant periods of time and, after walking with him for several blocks, he grabbed her by the throat, dragged her into an abandoned building, and twice forced her to engage in sexual intercourse while threatening to beat her with a stick. Johnson, nevertheless, argues that L. C.'s testimony was inconsistent and that no DNA or other physical evidence linked him to the crime. But it is the role of the

---

[6] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

[7] *See* former OCGA § 16-6-1 (a) (1) (1999).

[8] *See* former OCGA § 16-5-21 (a) (1) (2003).

jury—and not this Court—to "determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[9] And the jury obviously resolved those conflicts against Johnson, which it was entitled to do.[10] Furthermore, contrary to the implication in Johnson's argument, corroborating evidence is not required to support a rape conviction.[11] As a result, the evidence was sufficient to support Johnson's convictions.[12]

---

[9] *Harris v. State*, 332 Ga. App. 789, 790-91 (1) (775 SE2d 165) (2015) (punctuation omitted).

[10] *See Taylor v. State*, 331 Ga. App. 577, 581 (2) (a) (771 SE2d 224) (2015) ("[I]t is the jury's duty as factfinder to weigh the evidence presented at trial and to determine the credibility of the witnesses. It is not obligated to believe any witness, and it may accept or reject any portion of a witness's testimony." (punctuation omitted)).

[11] *See Garner v. State*, 346 Ga. App. 351, 355 (1) (816 SE2d 368) (2018) (holding that corroborating evidence was not required to support defendant's rape conviction); *Glaze v. State*, 317 Ga. App. 679, 681 (1) (732 SE2d 771) (2012) ("[T]he testimony of a single witness is generally sufficient to establish a fact[,] . . . [a]nd the General Assembly long ago removed the corroboration requirement from the rape statute." (punctuation and footnote omitted)).

[12] *See Garner*, 346 Ga. App. at 355 (1) (holding that corroborating evidence was not required to support defendant's rape conviction and that victim's testimony alone that defendant forced her to engage in sexual intercourse was sufficient); *Tyre v. State*, 323 Ga. App. 7, 38 (747 SE2d 106) (2013) (holding that victim's testimony that defendant threatened her with a knife before forcing her to engage in sodomy and sexual intercourse was sufficient to support defendant's convictions on charges of rape and aggravated assault with intent to rape).

11

Turning now to Johnson's more specific argument that the trial erred in failing to grant him a new trial, Georgia law provides that "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."[13] In addition, the presiding trial judge "may exercise sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."[14] Johnson does not contend that the trial court failed to exercise its discretion as a "thirteenth juror" under OCGA §§ 5-5-20 and 5-5-21, but rather that the jury's verdict was contrary to the principles of justice and equity.[15] That said,

---

[13] OCGA § 5-5-20.

[14] OCGA § 5-5-21.

[15] Even if Johnson *had* argued that the trial court failed to exercise its discretion as the "thirteenth juror," this claim would lack merit. Indeed, the trial court explicitly stated that it exercised its discretion to weigh the evidence on the general grounds under OCGA §§ 5-5-20 and 5-5-21 but, nonetheless, found that the verdict was not contrary to the evidence, strongly against the weight of the evidence, or contrary to law and the principles of justice and equity. Thus, the court's order clearly indicates that it properly performed its duty to exercise its discretion and weigh the evidence in consideration of the general grounds. *See Allen v. State*, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (holding that record indicated that trial court properly exercised its discretion under OCGA §§ 5-5-20 and 5-5-21 when it stated that it would not grant a new trial as "the thirteenth juror").

a motion for new trial based on OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. Whether to grant a new trial based on OCGA § 5-5-21, i.e., that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial court, and the appellate courts do not have the same discretion to order new trials.[16]

Consequently, even when an appellant asks us to "review a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in *Jackson v. Virginia*, *supra*, that is, if the evidence viewed in the light most favorable to the prosecution, supports the verdict or verdicts."[17] And as explained *supra*, the evidence the State presented at trial sufficiently supported the jury's verdict.[18]

---

[16] *Allen*, 296 Ga. at 741 (2) (770 SE2d 625) (citations & punctuation omitted).

[17] *Id.* (punctuation omitted); *accord Williams v. State*, 296 Ga. 573, 574 (769 SE2d 318) (2015).

[18] *See Allen*, 296 Ga. at 741-42 (2) (holding that because the evidence was sufficient under *Jackson* to support defendant's conviction, appellate court did not have the same discretion as trial court to order a new trial under OCGA §§ 5-5-20 and 5-5-21); *Allen v. State*, 345 Ga. App. 599, 603 (2) (814 SE2d 740) (2018) (same).

2. Johnson also contends that the trial court erred in allowing him to be retried after his first trial was allegedly improperly terminated, arguing that the retrial was barred by double jeopardy. Again, we disagree.

The constitutional prohibition against double jeopardy was designed to "protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."[19] Indeed, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[20] serves to "limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of

---

[19] *Green v. United States*, 355 U.S. 184, 187 (78 SCt 221, 2 LE2d 199) (1957); *see Ball v. United States*, 163 U.S. 662, 671 (16 SCt 1192, 41 LEd 300) (1896) ("The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the Constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense.").

[20] U.S. Const. Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." (emphasis supplied)); *see also* Georgia Const. Art. 1, Sec. 1, Para. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").

14

criminal laws."[21] Consequently, after a jury is impaneled and sworn, "jeopardy attaches, and the defendant normally has a right to have [his] trial completed by that particular tribunal."[22] Thus, if a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried "only if there was a 'manifest necessity' for the mistrial."[23] But importantly, the retrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict "does not constitute double jeopardy [when] there is [a] manifest necessity for declaring the mistrial."[24] Indeed, when a jury is "hopelessly deadlocked, this constitutes manifest necessity for

---

[21] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (I) (97 SCt 1349, 51 LE2d 642) (1977) (punctuation omitted).

[22] *Harvey v. State*, 296 Ga. 823, 830 (2) (a) (770 SE2d 840) (2015); *see Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994) ("Once [defendant's] jury was impaneled and sworn, jeopardy attached, and he was entitled to be acquitted or convicted by that jury." (punctuation omitted)).

[23] *Smith*, 263 Ga. at 783 (1); *see also* OCGA § 16-1-8 (a) (2) ("A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution . . . [w]as terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts or after a plea of guilty was accepted by the court.").

[24] *Mattox v. State*, 305 Ga. App. 600, 603 (2) (699 SE2d 887) (2010) (punctuation omitted).

declaring a mistrial."[25] And the determination of whether the jury is "in fact hopelessly deadlocked is a matter somewhat in the discretion of the trial court."[26]

In this matter, after both parties rested in Johnson's first trial, the jury began deliberating in the late afternoon, retired for the evening, and then began deliberating again the next morning. Approximately an hour and a half later, the jury informed the trial court that it could not reach a unanimous verdict, with eight guilty votes and four not guilty votes, and further added that "no one is moving." At that point, the trial court resisted the State's recommendation to provide an *Allen* charge[27] and, instead, directed the jury to "keep working." A few hours later, the jury again informed the trial court that it had not moved off its previous eight-to-four split and did not foresee doing so. The State reiterated its request that the trial court provide an *Allen* charge, and the court did so. A little over an hour later, the trial court brought the jury into the courtroom and asked if they still had not reached a verdict. The foreperson confirmed that they had not, at which time the trial court stated: "All right. You have worked

---

[25] *Id.* (punctuation omitted).

[26] *Id.* (punctuation omitted).

[27] *See supra* note 2 & accompanying text.

16

hard. I am sorry. I know you all are sorry, but I will excuse you. Thank you for giving this such a good, long, hard try."

Johnson now argues that the trial court never actually declared a mistrial, dismissed the jury without a showing of manifest necessity, and, therefore, his retrial should have been barred by double jeopardy; but Johnson never filed a plea in bar raising a double-jeopardy claim prior to the second trial. Consequently, his failure to do so "operates as a waiver of his subsequent challenge on double jeopardy grounds."[28] Furthermore, consent to the grant of a mistrial can be "express or implied[.]"[29] And although Johnson did not expressly consent to what was obviously a mistrial, he impliedly consented by failing to object.[30]

Moreover, Johnson's contention that his first trial did not end in a mistrial or that a mistrial was unwarranted lacks merit. Indeed, the question of whether a jury is

---

[28] *Evans v. State*, 320 Ga. App. 193, 194 (1) (739 SE2d 673) (2013) (punctuation omitted); *accord McCormick v. Gearinger*, 253 Ga. 531, 534 (3) (322 SE2d 716) (1984).

[29] *State v. Stockoff*, 333 Ga. App. 833, 838 (777 SE2d 511) (2015) (punctuation omitted).

[30] *See State v. Johnson*, 267 Ga. 305, 305-06 (477 SE2d 579) (1996) (holding that if a defendant consents to a mistrial, he may not thereafter utilize the mistrial as the basis of a plea of double jeopardy).

17

"'hopelessly deadlocked,' and thus the existence of manifest necessity for a mistrial, is within the discretion of the trial court."[31] In fact, great deference is accorded to decisions to "grant a mistrial based on the judge's belief that the jury cannot reach a verdict."[32] And here, the record shows that the trial court carefully considered the jury's progress and directed them to "keep working" after they informed the court that they had reached an impasse. Additionally, the trial court demonstrated its discretion by refusing the State's initial request that it provide an *Allen* charge and, instead, allowed the jury to continue deliberating for a few more hours before issuing that charge. It was then, only after allowing more time for deliberation and the jury maintaining its eight to four deadlock with no hope for resolution, that the trial court dismissed them, acknowledging their hard work as it did so. And although the trial court did not use the specific term "mistrial" when it excused the jury, there is no indication in the record that either of the parties were confused as to what had

---

[31] *Parker v. State*, 352 Ga. App. 93, 96 (833 SE2d 761) (2019) (punctuation omitted).

[32] *Meadows v. State*, 303 Ga. 507, 512 (2) (a) (813 SE2d 350) (2018) (punctuation omitted); *accord Parker*, 352 Ga. App. at 97.

occurred.[33] Given these circumstances, the trial court did not abuse its discretion in granting the mistrial,[34] and Johnson's retrial was not barred by double jeopardy.[35]

3. Johnson further contends that the trial court erred in denying his challenge that one of the State's peremptory strikes of a prospective juror was improperly based on race. Yet again, we disagree.

In *Batson v. Kentucky*,[36] the Supreme Court of the United States held that "the discriminatory use of peremptory challenges to exclude members of the defendant's

---

[33] *See Blake v. State*, 304 Ga. 747, 749 (2) (822 SE2d 207) (2018) (noting that the trial judge is not required to make explicit findings of manifest necessity nor to articulate on the record all the factors which informed the deliberate exercise of his discretion, rather, the only requirement is that the record must show that the trial court actually exercised its discretion).

[34] *See Parker*, 352 Ga. App. at 97-98 (holding that record showing trial court monitored jury's progress, allowed ample deliberation time, and carefully considered when to give *Allen* charge before declaring a mistrial based on the jury's inability to reach a verdict demonstrated trial court did not abuse its discretion); *Mattox*, 305 Ga. App. at 603-04 (2) (holding that even though jury deliberated for only six hours before court declared mistrial, record showing that jury told court early in its deliberations that it was evenly split between conviction and acquittal, told court at least three separate times that it was deadlocked, and that further deliberations would not result in a verdict demonstrated that court did not abuse its discretion).

[35] *See supra* notes 22-25 & accompanying text.

[36] 476 U.S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

race was a denial of equal protection."[37] And following that decision, the appellate courts of this State have explained that

> [t]he evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.[38]

Furthermore, in reviewing the trial court's disposition of a *Batson* challenge, we must bear in mind that "the trial court's decision rests largely upon assessment of the [propenent's] state of mind and credibility; it therefore lies peculiarly within a trial judge's province."[39] Accordingly, the trial court's findings as to "whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous."[40]

---

[37] *Willis v. State*, 201 Ga. App. 727, 728 (1) (411 SE2d 714) (1991).

[38] *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005) (punctuation omitted).

[39] *Duffie v. State*, 301 Ga. App. 607, 611 (3) (688 SE2d 389) (2009) (punctuation omitted).

[40] *Id.* (punctuation omitted); *accord Rakestrau v. State*, 278 Ga. 872, 874 (3) (608 SE2d 216) (2005).

In this matter, toward the conclusion of jury selection, Johnson challenged one of the State's peremptory strikes, claiming that it struck prospective Juror Number 18 solely because he was an African-American. The State's prosecutor responded that this was the only strike used on an African-American male but, nonetheless, claimed she struck him for two race-neutral reasons. First, the prosecutor stated that Juror 18 claimed he was familiar with the area where the crime occurred, and she preferred jurors to get their information from the evidence presented rather than their personal knowledge. Second, the prosecutor explained that when Johnson's trial counsel asked Juror 18 about his encounters with law enforcement, he responded that he had several such encounters when he was "running the streets[,]" which the prosecutor interpreted as the juror having a negative opinion of the police. The trial court then heard argument from Johnson's counsel as to why Juror 18 should not be struck, but it ultimately found that the State's reasons were race-neutral and, thus, its strike was properly exercised.

On appeal, Johnson argues that the trial court erred in denying his challenge to the State's peremptory strike of Juror 18, positing that the State's explanations constituted "covert discrimination." But importantly, at the second step of a *Batson* challenge, "all that is required is for the proponent of the strike to provide a facially

21

race-neutral explanation for the strike; this explanation need not be persuasive, or even plausible."[41] This, the State did; and after which the trial court found there was no discriminatory intent. Accordingly, we conclude that the trial court did not abuse its discretion in finding that, under the totality of the circumstances, the State lacked a discriminatory intent in exercising this peremptory strike.[42]

4. Finally, Johnson contends the trial court erred in denying his claims that his counsel rendered ineffective assistance. Once again, we disagree.

To evaluate Johnson's claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[43] which requires him to show that his trial counsel's performance was "deficient and that the deficient

---

[41] *Coleman v. State*, 301 Ga. 720, 723 (4) (804 SE2d 24) (2017) (punctuation omitted).

[42] *See Smith v. State*, 264 Ga. 449, 451-52 (2) (448 SE2d 179) (1994) (holding that State's explanation for peremptory strike of prospective jurors—that jurors lived in same general area as defendant's residence, State's witnesses' residences or scene of crime—was a racially neutral reason); *Bryant v. State*, 309 Ga. App. 649, 650-52 (2) (710 SE2d 854) (2011) (holding that defendant failed to show that State's peremptory strikes of prospective African-American jurors were motivated by discriminatory intent given State's race-neutral explanation that it exercised the strikes because said jurors claimed to have had negative experiences with law enforcement).

[43] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

22

performance so prejudiced him that there is a reasonable likelihood that, but for

counsel's errors, the outcome of the trial would have been different."[44] Importantly,

should a defendant "fail to meet his burden on one prong of this two-prong test, we

need not review the other prong."[45] In addition, there is a strong presumption that trial

counsel's conduct falls within the broad range of reasonable professional conduct,

and a criminal defendant must overcome this presumption.[46] In fact, the

reasonableness of counsel's conduct is "examined from counsel's perspective at the

time of trial and under the particular circumstances of the case[.]"[47] And decisions

regarding trial tactics and strategy may form the basis for an ineffectiveness claim

only if "they were so patently unreasonable that no competent attorney would have

---

[44] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[45] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[46] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[47] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

followed such a course."[48] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[49] With these guiding principles in mind, we turn now to Johnson's specific claims.

(a) For starters, Johnson argues that his counsel rendered ineffective assistance by failing to file a plea in bar raising a double jeopardy claim prior to his retrial. But as discussed in Division 2 *supra*, "[r]etrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not constitute double jeopardy [when] there is manifest necessity for declaring the mistrial."[50] And when the jury is hopelessly deadlocked, this "constitutes manifest necessity for declaring a mistrial."[51] Consequently, any challenge by Johnson's counsel on this ground would

---

[48] *Id.*

[49] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[50] *Evans*, 320 Ga. App. at 194 (1) (punctuation omitted).

[51] *Id.* (punctuation omitted).

have been futile, and the "[f]ailure to pursue a futile motion does not constitute ineffective assistance."[52]

(b) Johnson also contends that his trial counsel rendered ineffective assistance by failing on direct examination to elicit from him testimony that he was not wearing a belt on the day of assault and, thus, the belt recovered by the police in the abandoned laundromat—which was speckled with paint similar to his pants and boots—did not belong to him. Nonetheless, when asked about this during the hearing on his motion for new trial, Johnson's trial counsel stated that she did not recall him telling her that he was not wearing a belt on the day of the crime, and she believed that she would have elicited such testimony if he had done so. And although Johnson, in contrast, testified during the hearing that he did inform his counsel that the belt did not belong to him, in its order denying Johnson's motion for new trial, the trial court expressed its skepticism in this regard, noting that Johnson never denied wearing a belt when the State's prosecutor extensively cross-examined him at trial regarding his paint-speckled clothing. Suffice it to say, the trial court was authorized to believe trial

---

[52] *Hall v. State,* 351 Ga. App. 695, 702 (2) (832 SE2d 669) (2019) (punctuation omitted); *see Allen v. State*, 345 Ga. App. 599, 606 (3) (b) (814 SE2d 740) (2018) (holding that a plea in bar claiming double jeopardy would not have been successful and, therefore, trial counsel's failure to pursue it does not constitute ineffective assistance of counsel); *Evans*, 320 Ga. App. at 196 (4) (same).

counsel's testimony over Johnson's testimony, and its resolution of this credibility issue was not clearly erroneous.[53] Accordingly, Johnson failed to show that his trial counsel rendered ineffective assistance in this regard.

For all these reasons, we affirm Johnson's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman C. J., and Mercier, J. concur.*

---

[53] *See Anthony v. State*, ___ Ga. ___, Slip op. at 10 (3) (857 SE2d 682) (Case No. S21A0089; decided April 19, 2021) (holding that even though defendant's "testimony contradicted that of his counsel, the trial court implicitly credited counsel's version of events when it denied defendant's ineffective assistance claim, and we accept the trial court's factual findings"); *Littlejohn v. State*, 320 Ga. App. 197, 208 (5) (b) (739 SE2d 682) (2013) (finding that trial court was authorized to believe trial counsel's testimony that defendant never reported that jury saw him wearing shackles in court, thereby prejudicing him, and its resolution of that issue was not clearly erroneous).